IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESUS MANUEL GOMEZ GONZALEZ, | |
| Petitioner, | 4:26-CV-3051 |
| vs. | MEMORANDUM AND ORDER |
| MORAIMA PORTILLO VALENZUELA, | |
| Respondent. | |

The petitioner, Jesus Manuel Gomez Gonzalez, alleges that his children have been wrongfully removed from Mexico to Nebraska by their mother, respondent Moraima Portillo Valenzuela. *See* filing 3. He petitions for their return to Mexico pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention"), Oct. 25, 1980, 1343 U.N.T.S. 89, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001-11. *See* filing 3. This matter is before the Court on his motion for preliminary injunctive relief (filing 5), and the Court's own order to show cause (filing 4) with respect to service of process and prosecution of this case.

The Court will issue a very limited temporary restraining order. **Moraima Portillo Valenzuela may not remove the children from Nebraska until further order of this Court**. But the prosecution of this case has, to this point, been exceedingly deficient, and the Court expects the petitioner's counsel to help get it back on track by, among other things, promptly serving the petition. **Moraima Portillo Valenzuela must respond to the petition within 21 days of receiving it**. Fed. R. Civ. P. 12(a)(1)(A)(i).

BACKGROUND

The petitioner and respondent were married in Chihuahua, Mexico in 2010. Filing 3-3. Three children were born of the marriage: SGP in 2010,[1] AGP in 2013, and EGP in 2016. Filing 3-4; filing 3-5; filing 3-6. The parties divorced in Chihuahua in 2021. Filing 3 at 3-4. In relevant part, the Mexican court decreed that the parties would share legal custody over the children, with their mother exercising primary physical custody. Filing 3 at 3-4. She was to live at an address in the town of Santa Catalina de Villela, in the municipality of Namiquipa and state of Chihuahua. Filing 3 at 3-4.

In December 2024, SGP allegedly told his father that his mother wanted to move them to the United States. Filing 3 at 4. The father reported that to the Mexican court, which ordered the parties to appear in court and, on January 30, 2025, cautioned the mother not to take the children to the United States without their father's consent. Filing 3 at 4; *see also* filing 3-10 at 21. But the next day, the father called SGP, who told his father that they were in Nebraska. Filing 3 at 4. On February 10, the Mexican court found that the

---

[1] SGP's birthdate was redacted from the petition, so it's not clear whether SGP has reached the age of 16. This could be a problem for the petitioner, because the Convention applies only to children under the age of 16—even if the child turns 16 during the pending litigation. *See* the Convention, art. 4 ("The Convention shall cease to apply when the child attains the age of 16 years"); *Custodio v. Samillan*, 842 F.3d 1084, 1088 (8th Cir. 2016) (quoting U.S. Dep't of State, Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,504 (Mar. 26, 1986)) ("'Even if a child is under sixteen at the time of the wrongful removal or retention as well as when the Convention is invoked, the Convention ceases to apply when the child reaches sixteen'"). Even children approaching the age of 16 should have their wishes concerning return respected. *See McManus v. McManus*, 354 F. Supp. 2d 62, 71 (D. Mass. 2005); *see also* the Convention, art. 13; *Dubikovskyy v. Goun*, 54 F.4th 1042, 1048 (8th Cir. 2022); *Custodio*, 842 F.3d at 1091-92.

- 2 -

children had been abducted. Filing 3-7 at 32.[2] On September 11, a Mexican arrest warrant was issued for the mother. Filing 3-9.

The father, through counsel, filed this case pursuant to ICARA and the Convention on February 16, 2026. Filing 1. The operative petition prays, among other things, for a temporary restraining order and other injunctive relief. Filing 3 at 8. But no accompanying motion was filed. Nor has the father's counsel at any point asked for summons to be issued. *See* filing 4 at 1.

Six weeks after filing the case, the father's counsel contacted the Clerk's Office asking why nothing else had happened. Counsel was asked whether she had requested service of process, and also directed to this Court's local rules, which expressly provide:

> Requests for temporary restraining orders or preliminary injunctive relief found in a pleading shall not be considered by the Court unless asserted in a separate motion and supported by a separate brief and index of evidence as provided in NECivR 7.1(a).

NECivR 65.1. But nothing more was filed in the case.

On May 19, 2026—91 days after the operative petition was filed—the Magistrate Judge entered an order to show cause why the case shouldn't be dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to serve process. Filing 4. The Magistrate Judge's order set a show cause deadline for June 9. Filing 4. The day before that deadline, the father filed a motion for a temporary restraining order. Filing 5. There is still no request to issue summons.

---

[2] That's certainly how it appears to the Court, anyway—but the rather awkwardly translated documents provided by the father aren't always easy to read.

- 3 -

## DISCUSSION

### SERVICE OF PROCESS

An involuntary dismissal for failure to serve process, failure to comply with the Court's orders, or for failure to prosecute, is within the Court's discretion. Rule 4(m); Fed. R. Civ. P. 41(b); *see Schooley v. Kennedy*, 712 F.2d 372, 373-74 (8th Cir. 1983). Under Rule 4(m), there is a two-part inquiry. First, if the Court concludes there is good cause for the petitioner's failure to serve within 90 days, it shall extend the time for service. *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010). In determining whether good cause exists, the Court must focus primarily on the petitioner's reasons for not complying with the time limit in the first place. *Id.* It requires good faith and some reasonable basis for noncompliance with the rules. *Id.*

Second, even if the petitioner fails to show good cause, the Court still may extend the time for service rather than dismiss the case, if the petitioner establishes excusable neglect. Such relief is warranted where a party's failure to meet a deadline is caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. *Id.* at 959.

The Court surmises that the father's motion for a temporary restraining order is meant to respond, at least in part, to the Magistrate Judge's order to show cause. But the Court can only guess at that because the motion doesn't actually say it. The motion explains that an *ex parte* order restraining the mother from removing the children from the jurisdiction of this Court is necessary because, having absconded with the children once, she might do it again. *See* filing 5 at 2-3. Fair enough—the Court has that authority. *See* § 9004(a). But nothing in the motion even attempts to explain why it's taken four months to get to this point—meaning there's nothing to support a finding of good cause or excusable neglect. *See Kurka*, 628 F.3d at 957.

- 4 -

There is, in other words, a real question whether this Court should find that the father's counsel has failed to show cause why this case shouldn't be dismissed. ICARA still requires notice of a petition to be given in accordance with applicable law. *See* § 9003(c). And there is "no question that the Federal Rules of Civil Procedure apply to cases brought under [ICARA] and the Convention in federal court." *Norinder v. Fuentes,* 657 F.3d 526, 531 (7th Cir. 2011); *see also, e.g., Ferrarese v. Shaw,* 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016); *Brooke v. Willis,* 907 F. Supp. 57, 60 (S.D.N.Y. 1995).

But that would only mean further delaying resolution of the underlying dispute between the parents, which as a matter of international law should already have been resolved "expeditiously." *See* the Convention art. 11. The Court will, accordingly, afford the father's counsel a *brief* extension of time to serve process in this case.

PRELIMINARY INJUNCTIVE RELIEF

That brings the Court to the father's motion for preliminary injunctive relief, starting with a temporary restraining order. Filing 5. In determining whether to grant a temporary restraining order, the Court must consider the factors set forth in *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). Those factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114.

The father's motion actually requests several different things "on an *ex parte* basis":

- An *ex parte* restraining order prohibiting removal of the children from Nebraska pending resolution of the petition;

- The scheduling of an "expedited, *ex parte* preliminary injunction hearing on the merits of the Verified Complaint [sic];"
- An order that the Respondent show cause at that hearing why the children should not be returned to Mexico; and
- An order that trial on the merits be advanced pursuant to Fed. R. Civ. P. 65.

Filing 5 at 2-3. Those requests are confusing in several respects.

First, an *ex parte* preliminary injunction is directly contrary to the Federal Rules of Civil Procedure. Rule 65(a)(1) ("[t]he court may issue a preliminary injunction only on notice to the adverse party"). It's also not clear how the respondent could be ordered to show cause at an *ex parte* hearing. An "*ex parte*" proceeding is, by definition, conducted without notice to or argument from the adverse party. *Ex Parte, Black's Law Dictionary* (12th ed. 2024). But more fundamentally, it's not clear what the father actually wants from a preliminary injunction, given that returning the children to Mexico hardly seems like "preliminary" relief.

The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir. 1989); *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). Accordingly, courts have applied more stringent requirements to the granting of a mandatory preliminary injunction than a prohibitory preliminary injunction. *Ferry-Morse*, 729 F.2d at 593; *cf. Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993). Generally speaking, ordering a party "to take affirmative action . . . goes beyond the purpose of a *preliminary* injunction." *Sanborn Mfg.*, 997 F.2d at 490. And the burden on a movant for preliminary injunction is particularly heavy where

granting the injunction will give the movant substantially the relief he would obtain after trial on the merits. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998); *see also Noem v. Haaland*, 542 F. Supp. 3d 898, 911 (D.S.D. 2021).

There is also no basis to issue an order directing the mother to show cause why the children shouldn't be returned to Mexico. In a proceeding under ICARA, it's the petitioner's burden to establish, by a preponderance of the evidence, that a child has been wrongfully removed or retained within the meaning of the Convention. § 9003(e)(1); *see Golan v. Saada*, 596 U.S. 666, 671 (2022). The issuance of a preliminary injunction is also, as noted above, the movant's burden to justify. The father cites no authority for shifting his *prima facie* burden of proof to the mother at this point.

That brings the Court to perhaps the broadest problem in this case, at least for now: The paucity of actual *evidence* supporting the father's request for injunctive relief. A temporary restraining order must be supported by "specific facts in an affidavit or a verified complaint." Rule 65(b)(1)(A); *see also Bayson v. Se. Cmty. Coll.*, No. 8:25-CV-575, 2025 WL 3102007, at \*1 (D. Neb. Nov. 6, 2025) (citing *Jenkins v. Winter*, 540 F.3d 742, 747 (8th Cir. 2008); *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008); *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006); *Schneider v. Chertoff*, 245 F.R.D. 422, 424 (D. Neb. 2007)). And this Court's rules require a motion for a temporary restraining order or preliminary injunction to be "supported by a separate brief and index of evidence as provided in NECivR 7.1(a)." NECivR 65.1.

The father's motion was not accompanied by an index of evidence. Instead, the motion simply recites:

> By her signature below, Petitioner's counsel hereby certifies to the Court that, based on the specific facts shown by the Verified

Complaint, it clearly appears that immediate and irreparable injury, loss, or damage will result to Petitioner before Respondent or her attorney can be heard in opposition to this motion; that counsel has made no effort to give notice of this motion to Respondent, because if such notice was provided, there exists the possibility that Respondent would further secret both herself and Petitioner's children from both Petitioner and this Court.

Filing 5 at 2. But it (almost) goes without saying that the certification of counsel, however well-intentioned, doesn't prove the facts of a pleading. The motion refers to a "verified complaint," filing 5 at 2-3, but the operative amended petition isn't captioned as such, *see* filing 3 at 1. The father's initial pleading was captioned as a "Verified Complaint," filing 1 at 1, but it (like the operative amended petition) was signed only by the father's counsel. *See* filing 1 at 8; filing 3 at 9. Neither pleading, in other words, was signed by the father, much less sworn to or signed under penalty of perjury, so they weren't "verified" pleadings at all. *See Tweeton,* 287 F. App'x at 541; *cf., e.g., Roberson v. Hayti Police Dep't,* 241 F.3d 992, 994-95 (8th Cir. 2001); *Burgess v. Moore,* 39 F.3d 216, 217-18 (8th Cir. 1994).

There are exhibits attached to the operative petition, and with respect to an application or petition under ICARA,

or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.

- 8 -

§ 9005. So that does make it easier for the Court to consider several of the documents attached to the petition, particularly the Mexican legal documents. But while § 9005 makes such documents self-authenticating, authentication by itself doesn't establish admissibility—rather, authentication concerns the genuineness of an item of evidence, not its admissibility. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002); *see generally* 5 Weinstein's Federal Evidence § 902.02 (2026). So, for instance, while the Court may consider the request for international return the father submitted to the State Department via the Mexican Central Authority (filing 3-10), the statements made in that document by the father in support of his request remain unsworn hearsay, because authentication of a document does not establish admissibility, or preclude inadmissibility, under other rules of evidence. *See Padilla v. Troxell*, 850 F.3d 168, 177-78 (4th Cir. 2017).

What that leaves the Court with is a record of the Mexican legal proceedings—which is certainly important—but little in the way of direct evidence establishing the known circumstances of the children's alleged abduction. And that incomplete record colors the Court's analysis of the *Dataphase* factors.

Start with the father's likelihood of success on the merits. To establish a *prima facie* case for return under ICARA and the Convention, the father must establish by a preponderance of the evidence that (1) immediately prior to removal, the children habitually resided in Mexico; (2) their removal was in breach of his custody rights under Mexican law; and (3) he was exercising those custody rights at the time of the removal. *Dubikovskyy*, 54 F.4th at 1047; *Barzilay v. Barzilay*, 600 F.3d 912, 917 (8th Cir. 2010).

The Mexican court's finding that the children had been abducted within the meaning of Mexican law, *see* filing 3-7 at 32-33, is certainly a strong

foundation—it's likely that the father will be able to establish that removal of the children to the United States breached his custody rights. *See Diaz v. Rios Ibarra,* No. 19-CV-3183, 2019 WL 4394491, at *5 (D. Ariz. Sept. 13, 2019) (citing *Abbott v. Abbott,* 560 U.S. 1 (2010)) (finding that divorce decree which specified the address where the child would reside was a *ne exeat* "right of custody" within the meaning of the Convention); *see also Stirk v. Lopez,* No. 20-CV-2894, 2021 WL 1139664, at *5 (M.D. Fla. Mar. 25, 2021) (holding in a case arising from Chihuahuan law that "[i]f a Mexican judgment establishes a child's residence or awards visitation, a parent cannot unilaterally remove the child to another country"); *Garcia v. Pinelo,* 125 F. Supp. 3d 794, 804 (N.D. Ill.), *aff'd,* 808 F.3d 1158 (7th Cir. 2015) (explaining *patria potestas* rights under Mexican law); *Whallon v. Lynn,* 230 F.3d 450, 454-58 (1st Cir. 2000) (same); *Saldivar v. Rodela,* 879 F. Supp. 2d 610, 624-26 (W.D. Tex. 2012) (discussing *patria potestas* specifically as embodied in Chihuahua's civil code); *Gonzalez v. Preston,* 107 F. Supp. 3d 1226, 1234 (M.D. Ala. 2015) (same); *see generally* filing 3-11. The requirements of the parties' divorce decree also imply that the children were—or at least, should have been—habitually residing in Chihuahua in January 2025.

But that point is not beyond dispute, based on the present record. The father's brief cites no support for his assertion that the children were habitual residents of Mexico in January 2025. *See* filing 5-1 at 9; *see also Tsuruta v. Tsuruta,* 76 F.4th 1107, 1110 (8th Cir. 2023) (citing *Monasky v. Taglieri,* 589 U.S. 68, 77 (2020)) (child's habitual residence is the place where a child is at home *at the time of removal or retention*); *Cohen v. Cohen,* 858 F.3d 1150, 1153 (8th Cir. 2017) (citing *Silverman v. Silverman,* 338 F.3d 886, 897-98 (8th Cir. 2003) (en banc)) (habitual residence is determined as of the time "immediately before the removal or retention"). Nor does the father's brief cite evidence to

- 10 -

support his contention that he was exercising his custodial rights when the children were removed. *See* filing 5-1 at 9. Rather, the brief cites primarily to the petition, *e.g.* filing 5-1 at 3—which, again, isn't evidence.

Nor is the father's *prima facie* case the end of the inquiry. The Convention does contain exceptions, albeit narrow ones, that the mother may prove. *See* § 9003(e)(2) (citing the Convention, arts. 12-20); *Rodriguez v. Molina,* 96 F.4th 1079, 1082 (8th Cir. 2024); *Dubikovskyy,* 54 F.4th at 1047 (citing *Custodio,* 842 F.3d at 1088); *see generally Lozano v. Montoya Alvarez,* 572 U.S. 1, 5 (2014). For instance, because this action was commenced more than a year after the alleged abduction (and has languished for some time since), the mother may be able to demonstrate that the children are settled in their new environment. *See* the Convention, art. 12; § 9003(f)(3) ("the term 'commencement of proceedings', as used in article 12 of the Convention, means . . . the filing of a petition [in court]"); *Lozano,* 572 U.S. at 14-15 ("expiration of the 1–year period opens the door to consideration of . . . the child's interest in settlement"). Or the mother could try to show that returning the children to Mexico "'would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.'" *Golan,* 596 U.S. at 670-71 (quoting the Convention, art. 13(b)). Or perhaps one or more of the children has reached the age of 16 or "'attained an age and degree of maturity at which it is appropriate to take account of its views'" and "'objects to being returned.'" *Custodio,* 842 F.3d at 1089 (quoting the Convention, art. 13).

All of which is to say that while the father's claim certainly has some support behind it, this case is far from resolved. The Mexican court documents do establish that the mother was directed by a court not to leave Mexico, and did so anyway. That is sufficient to warrant a temporary restraining order in service of preserving this Court's jurisdiction over the matter. *See* § 9004(a);

- 11 -

*see also Chambers v. Russell*, No. 20-CV-498, 2020 WL 13042301, at *2 (M.D.N.C. June 16, 2020) (collecting cases). Such an order imposes no injury on the mother, *see Torres v. Morales Hernandez*, No. 25-CV-1208, 2025 WL 4114908, at *3 (W.D. Tex. Oct. 20, 2025), while protecting the public interest and preventing potentially irreparable injury to the father by promoting the expeditious resolution of this dispute, *see Chambers*, 2020 WL 13042301, at *3.

But for the reasons explained above, further preliminary injunctive relief is unwarranted at this point. The Court fully intends to expedite resolution of this case on the merits, but is not in a position to determine precisely what form that will take until process has been served, although the development of an evidentiary record will obviously be a priority.

## CONCLUSION

The Court will direct the father's counsel to immediately effect service of process and file proof of such service with the Court. The Court will also ask the Magistrate Judge to promptly set a case management conference upon the mother's response to the petition or the expiration of her responsive pleading deadline, to discuss the issues identified by this memorandum and order as well as expedited case progression deadlines. *See generally* James D. Garbolino, *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* app. C (Fed. Jud. Ctr. 3d ed. 2023).

IT IS ORDERED:

1.      The father's motion for temporary restraining order (filing 5) is granted in part.

2.  The mother is ordered not to remove the children from Nebraska until further order of the Court. **Disregarding this order will have serious legal consequences**.

3.  The father's counsel shall serve a copy of the operative amended petition and a copy of this order on the mother, and shall file proof of such service in the form required by Rule 4(l), **on or before June 30, 2026**. Failure to do so may result in the dismissal of this case without further notice.

4.  Promptly upon receipt of the mother's response to the petition or expiration of her responsive pleading deadline, the Magistrate Judge shall set a case management conference to discuss expedited progression of this case.

Dated this 16th day of June, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge