**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JESUS MANUEL GOMEZ GONZALEZ,<br><br>Petitioner,<br><br>vs.<br><br>MORAIMA PORTILLO VALENZUELA,<br><br>Respondent. | 4:26-CV-3051<br><br>**RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Respondent Moraima Portillo Valenzuela submits the following proposed findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), NECivR 52.1, and Paragraph 13 of the Case Progression Order (Filing No. 23). Citations to "Stip." refer to the uncontroverted facts in § (B) of the Order on Final Pretrial Conference; "Ex." refers to trial exhibits; "Filing No." refers to the docket; and "Tr." refers to the anticipated trial testimony of the witness named. Respondent reserves the right to conform these proposed findings to the evidence received at trial.

## I. PROPOSED FINDINGS OF FACT

### A. The Parties and the Children

1. Petitioner Jesus Manuel Gomez Gonzalez is a citizen and resident of Mexico. Stip. ¶ 1; Filing No. 18 at 1, ¶ 1.

2. Respondent Moraima Portillo Valenzuela is a citizen of Mexico who resides in O'Neill, Holt County, Nebraska. Stip. ¶¶ 2, 14.

3. The parties married on February 12, 2010, in Benito Juárez, Namiquipa, Chihuahua, Mexico. Stip. ¶ 3; Filing No. 1-3.

4. The parties are the parents of three children, each born in the State of Chihuahua, Mexico: S.G.P., born in 2010; A.G.P., born in 2013; and E.G.P., born in 2016. Stip. ¶ 4; Filing Nos. 1-4 through 1-6; Ex. 112.

5. S.G.P. was born in July 2010 and attained the age of sixteen years in July 2026, while this action was pending. Stip. ¶ 20; Exs. 110, 111; Ex. 109 at 1; Tr. (Portillo).

6. A.G.P. and E.G.P. are under the age of sixteen. Stip. ¶ 21.

**B. The Divorce Decree**

7. On June 23, 2020, Respondent commenced proceedings to dissolve the marriage before the Second Family Court by Hearings of the Judicial District of Benito Juárez, in Expediente 294/2020. Stip. ¶ 5; Filing No. 1-7 at 3.

8. On March 8, 2021, that court entered judgment dissolving the marriage and approving the parties' agreement concerning parental authority, custody, support, and parenting time. The judgment became final on March 10, 2021. Stip. ¶ 6; Filing No. 1-7 at 22–29; Filing No. 1-8 at 1.

9. Clause SEGUNDA of the approved agreement provides that both parents retain *patria potestad* (parental authority) and awards *guarda y custodia definitiva* (definitive custody) of the children to Respondent, to be exercised at her residence in Santa Catalina de Villela, Namiquipa, Chihuahua. Stip. ¶¶ 7–8; Filing No. 1-7 at 7, 26.

10. Clause TERCERA gives Petitioner alternating parenting time from Thursday to Sunday at 6:00 p.m., alternating Easter and summer vacation weeks, and alternating December periods, and requires Petitioner to pick up and return the children at Respondent's residence. Stip. ¶ 9; Filing No. 1-7 at 7, 26.

11. Clause TERCERA does not provide Petitioner a Tuesday-to-Wednesday parenting period. Filing No. 1-7 at 7, 26. Petitioner's declaration asserts such a period, Filing No. 18 at 3–4, ¶ 9, but no order providing for it is in evidence. The Court gives Petitioner's account reduced weight where it departs from the decree.

12. Clause CUARTA requires Petitioner to pay weekly child support of 1,300 Mexican pesos. Stip. ¶ 10; Filing No. 1-7 at 26–27.

13. The decree records the withdrawal of protective measures Respondent had previously requested. Filing No. 1-7 at 27–28.

## C. Petitioner's Violence Toward Respondent

14. In June 2020, Petitioner was arrested in Namiquipa in connection with an incident of domestic violence. Ex. 106 at 2; Tr. (Portillo). Three weeks later, Respondent filed for divorce. Filing No. 1-7 at 3.

15. In July 2020, a restraining order was served on Petitioner. Ex. 106 at 2.

16. In January 2021, police responded to an emergency report by Respondent of forced entry and attempted abuse by Petitioner. Ex. 106 at 2; Tr. (Portillo).

17. At approximately 4:00 a.m. on May 1, 2022, more than a year after the decree, Petitioner came to Respondent's residence, shouted, struck the door, and broke its glass with a stone. The children were in the residence and were frightened. Ex. 107 at 1–3; Ex. 106 at 2; Tr. (Portillo).

18. On May 19, 2022, Respondent filed a request for protection describing the May 1 incident. The request is accompanied by photographs that fairly depict the damaged door. Ex. 107; Tr. (Portillo).

19. On December 25, 2024, Petitioner wrote Respondent a handwritten letter. In it, Petitioner asked Respondent's forgiveness for insulting her, shouting at her, his jealousy, controlling money, and slapping her on two occasions ("aquellas 2 veces"), and acknowledged arriving home drunk and mistreating her. In the same letter Petitioner asserted that Respondent had tried to hit him. Ex. 108 at 7–14; Tr. (Portillo).

20. In a second handwritten letter, Petitioner asked Respondent's forgiveness for forcing intimacy on her against her wishes, shouting at her while drunk, humiliating her, and withholding money. Ex. 108 at 15–20; Tr. (Portillo).

21. Petitioner wrote both letters. Respondent is familiar with Petitioner's handwriting from more than a decade of marriage and identified it; the letters were received by Respondent from Petitioner; and their contents refer to events and matters known to the two of them. Ex. 108; Tr. (Portillo).

22. The children were in Petitioner's care for part of the period from December 30, 2024 to January 14, 2025. Stip. ¶ 12. On January 14, 2025, police intervened to return the children to Respondent after Petitioner failed to return them as required. Ex. 106 at 2; Tr. (Portillo). Petitioner's declaration describes the January 14 handover without mentioning the police. Filing No. 18 at 6, ¶ 19.

23. Petitioner's conduct toward Respondent was repeated over a period of at least four and a half years, from June 2020 to at least December 2024. It continued after his arrest, after service of a restraining order, and after entry of a decree awarding Respondent custody. Findings 14–22.

24. The children were exposed to Petitioner's conduct, including the May 2022 incident, and were frightened by it. Ex. 107 at 1–2; Tr. (Portillo).

**D. The Departure and the Delay**

25. On or about January 30–31, 2025, Respondent traveled with the three children from Mexico to the United States. Stip. ¶ 13; Filing No. 18 at 6–7, ¶ 21.

26. Petitioner learned the following day that the children were in the United States. Filing No. 1-10 at 5–6.

27. Respondent did not conceal the children. Tr. (Portillo). They have lived openly in one community and have attended school there since approximately February 2025. Stip. ¶¶ 14–15.

28. On February 10, 2025, after the children's departure, the Second Family Court entered an order stating that both parties jointly exercise *patria potestad* and reciting earlier directions concerning removal of the children and production of their travel documents. Stip. ¶ 16; Filing No. 1-7 at 32–34. The record does not establish when, or whether, Respondent was served with those earlier directions before she left Mexico.

29. On or about April 15, 2025, Petitioner submitted a request for the children's return through the Mexican Central Authority. Stip. ¶ 17; Filing No. 1-10 at 8, 11.

30. Petitioner filed this action on February 16, 2026, and filed an amended petition on February 17, 2026. Stip. ¶ 18; Filing No. 1. No proceeding concerning the children under the Convention or ICARA was commenced in any court in the United States before February 16, 2026. Stip. ¶ 19.

31. Petitioner attributes the delay in filing to difficulty obtaining counsel. Filing No. 18 at 8, ¶ 27.

32. Measured from January 30, 2025, this action was commenced 382 days after the children's removal; measured from January 31, 2025, 381 days. Either interval exceeds one year.

33. By Petitioner's own account, a warrant for Respondent's arrest issued in Mexico on or about September 11, 2025. Filing No. 18 at 8, ¶ 25.

**E. The Children's Lives in Nebraska**

34. Since on or about January 30–31, 2025, Respondent and all three children have resided continuously in the District of Nebraska, and they presently reside together in O'Neill, Holt County, Nebraska. Stip. ¶ 14; Tr. (Portillo).

35. The children have attended school in the O'Neill area since approximately February 2025. Stip. ¶ 15. A.G.P. and E.G.P. completed the 2025–2026 school year there and are enrolled for the 2026–2027 school year. Ex. 114; Tr. (Portillo).

36. A.G.P. is enrolled in the 7th grade at O'Neill Junior-Senior High School. E.G.P. is enrolled in the 4th grade at O'Neill Elementary School. Each attends regularly and is progressing academically. Ex. 114; Tr. (Portillo).

37. A.G.P. and E.G.P. have formed friendships in O'Neill and participate in [church / sports / school and community activities]. Tr. (Portillo).

38. Respondent has maintained a stable household for the children in O'Neill throughout their residence there. Tr. (Portillo).

39. S.G.P. lives in the same household as A.G.P. and E.G.P. He is a tenth-grade student and receives medical care in O'Neill. Ex. 109 at 1; Stip. ¶ 14. A.G.P. and E.G.P. have lived with S.G.P. all their lives.

40. Respondent has had definitive custody of the children and has been their primary caregiver since at least March 2021. Filing No. 1-7 at 7, 26; Tr. (Portillo).

41. No evidence shows a concrete or imminent threat that A.G.P. or E.G.P. will be removed from the United States. Tr. (Portillo).

42. A.G.P. and E.G.P. have significant connections to O'Neill, Nebraska, that demonstrate a stable and permanent attachment to their new environment. Findings 34–41.

**F. Petitioner's Proposed Return Arrangements**

43. Petitioner's return proposal contemplates transportation, housing, support, supervised contact between Petitioner and the children, and family therapy. Filing No. 1-10 at 10–11.

44. Petitioner's proposal of supervised contact reflects his recognition that unsupervised contact presents a risk to the children.

45. Earlier court orders—the 2020 restraining order and the 2021 decree—did not prevent Petitioner's subsequent conduct toward Respondent. Findings 15, 17, 19–22. The Court has no reasonable basis to expect that undertakings in this proceeding would be more effective.

46. No undertaking by Petitioner can resolve or control the Mexican warrant he describes, or assure that A.G.P. and E.G.P. would remain in Respondent's care upon return. Finding 33.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Jurisdiction and Governing Law

1. The Court has jurisdiction under 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331. The children were located in this District when the petition was filed, and venue is proper. 22 U.S.C. § 9003(b); Stip. ¶¶ 14, 23.

2. The United States and Mexico are Contracting States, and the Convention has been in force between them since October 1, 1991. Stip. ¶ 22.

3. The Court determines only rights under the Convention and does not decide the merits of any custody claim. Convention art. 19; 22 U.S.C. § 9001(b)(4); Stip. ¶ 24.

4. Petitioner must establish by a preponderance of the evidence that each child was wrongfully removed within the meaning of the Convention. 22 U.S.C. § 9003(e)(1)(A). Respondent must establish the Article 12 exception by a preponderance of the evidence and the Article 13(b) exception by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A)–(B).

### B. Article 4: S.G.P.

5. The Convention "shall cease to apply when the child attains the age of 16 years." Convention art. 4. When a child turns sixteen while Convention proceedings are pending, the Convention no longer applies to that child and the claim for his return is moot. *Custodio v. Samillan*, 842 F.3d 1084, 1088 (8th Cir. 2016).

6. S.G.P. attained sixteen in July 2026. Finding 5. The Convention no longer applies to him, and the claim for his return is dismissed without prejudice as moot. This disposition does not adjudicate custody.

**C. Article 3**

7. Because Respondent has established the Article 12 exception and, independently, the Article 13(b) exception as to A.G.P. and E.G.P., the Court need not and does not decide whether Petitioner has established each element of a wrongful removal under Article 3. The Court assumes, without deciding, that he has.

**D. Article 12: A.G.P. and E.G.P. Are Now Settled**

8. Where proceedings are commenced more than one year after the wrongful removal, the Court must order return "unless it is demonstrated that the child is now settled in its new environment." Convention art. 12.

9. For a child located in the United States, proceedings are "commenced" by the filing of a petition in a court authorized to exercise jurisdiction where the child is located. 22 U.S.C. § 9003(b), (f)(3). A request to a Central Authority does not commence proceedings.

10. Article 12's one-year period is not a statute of limitations and is not subject to equitable tolling. *Lozano v. Montoya Alvarez*, 572 U.S. 1, 15–17 (2014).

11. These proceedings were commenced on February 16, 2026, more than one year after the removal of A.G.P. and E.G.P. on or about January 30–31, 2025. Findings 25, 30, 32. Petitioner's April 2025 request to the Mexican Central Authority did not commence proceedings. Petitioner's difficulty obtaining counsel does not extend the period. And there

was no concealment: Petitioner knew the day after the children's departure that they were in the United States. Findings 26–27.

12. A child is "settled" when she has significant connections to her new home that indicate a stable and permanent attachment, determined from the totality of the circumstances, including the child's age, the stability and duration of her residence, school attendance, friends and relatives in the area, community and extracurricular activities, the respondent's employment and financial stability, and immigration status. *Lozano v. Alvarez*, 697 F.3d 41, 56–57 (2d Cir. 2012), *aff'd*, 572 U.S. 1 (2014); *In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009). Immigration status does not preclude a finding of settlement absent a concrete and imminent threat of removal. *In re B. Del C.S.B.*, 559 F.3d at 1009–14.

13. Respondent has established by a preponderance of the evidence that A.G.P. and E.G.P. are now settled in their new environment, whether settlement is measured on the date the petition was filed or on the date of trial. Findings 34–42.

14. Although Article 12 does not require the Court to refuse return of a settled child, and Article 18 preserves the Court's authority to order return at any time, the Court declines to order return. Convention arts. 12, 18; *Lozano*, 572 U.S. at 18–19 (Alito, J., concurring). The children did not conceal themselves and were not concealed; Petitioner knew where they were and waited more than a year to seek relief in court; the children are settled with their mother and their older brother, over whom the Convention no longer has any application; and the record reflects a history of Petitioner's violence toward Respondent. Findings 14–24, 26–27, 34–42. The Convention "does not pursue" its goal of deterring abduction "at any

cost," and the children's interest in settlement here overcomes the return remedy. *Lozano*, 572 U.S. at 16.

15. The petition is denied as to A.G.P. and E.G.P. under Article 12.

**E. Alternatively, Article 13(b): Grave Risk**

16. The Court is not bound to order return if "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention art. 13(b). Respondent must show by clear and convincing evidence that such a risk is highly probable, and the Court considers the nature and frequency of the abuse and the likelihood of its recurrence. *Rodriguez v. Molina*, 96 F.4th 1079, 1083 (8th Cir. 2024). The gravity of a risk involves both the probability of harm and its magnitude. *Acosta v. Acosta*, 725 F.3d 868, 876 (8th Cir. 2013).

17. Evidence of direct physical abuse of the child is not required; violence toward and intimidation of a parent, in the children's presence, may establish grave risk. *Id.* at 876–77.

18. Respondent has established by clear and convincing evidence that returning A.G.P. and E.G.P. to Mexico would expose them to a grave risk of physical or psychological harm or otherwise place them in an intolerable situation. Petitioner's violence toward Respondent was repeated; it is documented by police records and admitted in Petitioner's own letters; it reached the children; and it continued despite an arrest, a restraining order, and a custody decree, persisting to within weeks of the children's departure. Findings 14–24. This record is materially different from that in *Rodriguez*, 96 F.4th at 1083–84, and comparable to that in *Acosta*, 725 F.3d at 876–77.

19. Having found grave risk, the Court is not required to examine every possible ameliorative measure before denying return, and it may decline to consider measures it reasonably expects will not be followed. *Golan v. Saada*, 596 U.S. 666, 680–82 (2022). Any measures considered must prioritize the children's physical and psychological safety and must not usurp the role of the court that will decide custody. *Id.*

20. The Court has considered Petitioner's proposed arrangements, including supervised contact and family therapy, and finds that they would not adequately protect A.G.P. and E.G.P. Prior court orders did not prevent Petitioner's conduct, and no undertaking by Petitioner can resolve the Mexican warrant he describes or assure the children's continued care by Respondent upon return. Findings 43–46.

21. Alternatively, the petition is denied as to A.G.P. and E.G.P. under Article 13(b).

**F. Evidentiary Rulings**

22. Petitioner's letters (Ex. 108) are authenticated by Respondent's familiarity with Petitioner's handwriting and by their contents and circumstances and are admissible against Petitioner as statements of a party opponent. Fed. R. Evid. 801(d)(2)(A), 901(b)(2), (4). The letters are received in their entirety. Fed. R. Evid. 106.

23. The Namiquipa police record (Ex. 106) is admissible as a public record, Fed. R. Evid. 803(8), and for good cause is treated as presumptively authentic without final certification. Fed. R. Evid. 902(3).

24. Documents accompanying Petitioner's Convention application or petition are admissible without authentication, 22 U.S.C. § 9005, but their admission does not establish the truth of their contents, which the Court has weighed with all the evidence.

### G. Expenses

25. Because return is not ordered, 22 U.S.C. § 9007(b)(3) does not authorize an award of expenses against Respondent. Were return ordered, an award would be clearly inappropriate because Petitioner committed repeated acts of intimate-partner violence against Respondent and her departure from Mexico was related to that violence. *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79–81 (2d Cir. 2016). Each party shall bear its own fees, costs, and expenses.

## III. PROPOSED DISPOSITION

IT IS ORDERED:

1. The petition for return of S.G.P. is dismissed without prejudice as moot under Article 4 of the Convention.
2. The petition for return of A.G.P. and E.G.P. is denied.
3. All provisional orders restricting the removal of the children from this District are dissolved.
4. Petitioner's request for fees, costs, and expenses is denied. Each party shall bear its own fees, costs, and expenses.
5. Nothing in this order determines the merits of any custody issue. Convention art. 19; 22 U.S.C. § 9001(b)(4).
6. A separate judgment will be entered.

Dated this _28th__ day of September, 2026.

MORAIMA PORTILLO VALENZUELA,
Respondent,

***By: s/ Chinedu Igbokwe***
Chinedu Igbokwe, #23789
Emeka Igbokwe, #24905
BANWO & IGBOKWE LAW FIRM, LLC
3568 Dodge Street, Suite 100
Omaha, Nebraska 68131
Telephone: (402) 345-5759
Facsimile: (402) 345-6404
nedu@bi-law.com
emeka@bi-law.com
*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

I certify that on September _28th__, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel of record, including Brianna N. Cotton, McGill Law, P.C., L.L.O., 1411 N. 72nd Street, Omaha, NE 68114, bri@mcgilllawyers.com.

***s/ Chinedu Igbokwe***